Case 1:21-mj-00500-GMH   Document 1

Case: 1:21-mj-00500
Assigned To : Harvey, G. Michael
Assign. Date : 6/25/2021
Description: Complaint w/ Arrest Warrant

# AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT AND ARREST WARRANT

I, Joshua D. Stenzel, being first duly sworn, hereby depose and states as follows:

## PURPOSE OF THE AFFIDAVIT

This affidavit is submitted in support of a Criminal Complaint for ALAN WILLIAM BYERLY, charging violations of 18 U.S.C. §§ 111(b), 113(a)(4) and (5), 231(a)(3), 1752(a)(1), (2), and (4), and 40 U.S.C. § 5104(e)(2)(F).

## BACKGROUND OF AFFIANT

Your affiant, Joshua D. Stenzel, is a Special Agent with the Federal Bureau of Investigation (FBI). Currently, I am tasked with investigating criminal activity in and around the Capitol grounds on January 6, 2021. As a Special Agent, I am authorized by law or by a Government agency to engage in or supervise the prevention, detention, investigation, or prosecution of a violation of Federal criminal laws.

Unless otherwise stated, the information in this Affidavit is either personally known to me, has been provided to me by other individuals, or is based on a review of various documents, records, and reports. Because this Affidavit is submitted for the limited purpose of establishing probable cause to support an application for an arrest warrant, it does not contain every fact known by me or the United States. The dates listed in this Affidavit should be read as "on or about" dates. Unless specifically indicated, all conversations and statements described in this affidavit are related in substance and in part only and are not intended to be a verbatim recitation of such statements. All times provided in this affidavit should be read as "on or about" times and are given in Eastern Standard Time unless otherwise noted.

## STATEMENT OF FACTS SUPPORTING PROBABLE CAUSE

### *Background – the U.S. Capitol on January 6, 2021*

The United States Capitol Building and Grounds constitute the "territorial jurisdiction" of the United States as "lands reserved or acquired for the use of the United States" and under its "exclusive or concurrent jurisdiction." 18 U.S.C. § 7(3). Congress has enacted certain criminal prohibitions for conduct occurring within the territorial jurisdiction of the United States (also known as federal enclave jurisdiction).

U.S. Capitol Police secure the U.S. Capitol 24 hours a day. Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts manned by U.S. Capitol Police. Only authorized people with appropriate identification are allowed access inside the U.S. Capitol. On January 6, 2021, the exterior plaza of the U.S. Capitol was also closed to members of the public.

On January 6, 2021, a joint session of the United States Congress convened at the United States Capitol, which is located at First Street SE, in Washington, D.C. During the joint session,

elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the United States Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020. The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

As the proceedings continued in both the House and the Senate, and with Vice President Mike Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol. As noted above, temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside.

At such time, the certification proceedings were still underway, and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, around 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of the U.S. Capitol Police, as others in the crowd encouraged and assisted those acts.

Shortly thereafter, at approximately 2:20 p.m., members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Mike Pence, were instructed to—and did—evacuate the chambers. Accordingly, the joint session of the United States Congress was suspended until shortly after 8:00 p.m. Vice President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the sessions resumed.

During national news coverage of the events, video footage captured on Body Worn Cameras (BWC) of Law Enforcement Officers of the Washington, D.C. Metro Police Department (MPD) present on the scene depicted evidence of violations of local and federal law, including scores of individuals inside the U.S. Capitol building without authority to be there.

Additionally, news coverage of January 6, 2021, documented numerous attacks on members of the news media who were present to cover the events at, around, and in the U.S. Capitol building. These included reports of members of the news media being harassed, threatened, robbed, and assaulted based on their perceived roles as journalists, and equipment belonging to several news organizations was stolen, damaged, and/or destroyed.

### *Facts Specific to This Complaint*

Several videos from various sources taken during assaults on January 6, 2021, at the United States Capitol, depict an individual identified as ALAN WILLIAM BYERLY: 1) assaulting MPD and unidentified U.S. Capitol Police (USCP) officers, to include the use of a taser or taser-like device meant to deliver a debilitating electric shock; and 2) assaulting a credentialed member of the news media (MONM), specifically a photographer assigned to the Associated Press (hereinafter referred to as "the MONM victim"). All these crimes occurred in the general area of the West Terrace of the U.S. Capitol Building.

FBI learned of the name ALAN WILLIAM BYERLY (hereinafter BYERLY) during the course of its investigation and compared his known images to the images of the individual captured in riot footage assaulting law enforcement and the MONM victim described above. The riot footage revealed a white male with approximately shoulder length graying black hair, who was wearing a gray "Kutztown" beanie, a distinctive neon "safety" yellow long-sleeve shirt under a black jacket with blue jeans, black shoes, a gray and black striped face covering, and a black backpack. The FBI believed it was a positive match and conducted the following additional investigative steps to corroborate BYERLY's identity and his involvement in the assault on MPD and USCP officers and the MONM victim during the January 6th Capitol Riots.

**PHOTO A: KNOWN IMAGE OF BYERLY**



**Assault on Law Enforcement Officers**

Your affiant has reviewed the bodyworn camera (BWC) footage of three MPD officers who were physically assaulted by a man later identified as ALAN WILLIAM BYERLY. The BWC footage shows the following:

At approximately 2:10 p.m., a crowd of violent rioters were assembled on the Lower West Terrace of the Capitol Grounds adjacent to the media tower. Law enforcement officers from USCP and MPD had formed a line of bike racks to act as a barrier against the crowd. Officers were standing watch behind this line and fending off repeated attempts by the rioters to pull on the bike racks and assault the officers **(Photo B).**

**PHOTO B**



As shown in **Photo C** below, beginning at approximately 2:10 p.m., the individual later identified as BYERLY was seen among the crowd of rioters near the established police line with what appears to be a taser device designed to deliver a debilitating electric shock grasped in BYERLY's right hand. At approximately 2:10:54 p.m., and seemingly unprovoked, BYERLY appeared to press and activate the taser, as the electric charge of the taser was clearly audible. Shortly thereafter, BYERLY raised his right arm while holding the taser in his right hand and proceeds to charge at the officers **(Photo D).**

**PHOTO C**



**PHOTO D**



In direct response to BYERLY's action and starting at approximately 2:10:54 p.m., multiple MPD and USCP officers yelled "taser! taser! taser!," seemingly to warn other officers that BYERLY was charging and attacking the officers by using a taser. At approximately 2:10:55 p.m., and according to MPD Officer BWC, an identified MPD Officer (herein referred to as MPD-1) yelled: "He had a taser," to another officer, apparently referring to BYERLY who, at the time, was being restrained by other officers.

At 2:11 p.m., the officers appeared to have successfully removed the taser from BYERLY's hands. However, as depicted in **Photos E** and **F** below, BYERLY continued to charge toward the officers, physically strike, and push against officers, specifically identified officers herein referred to as A.G., I.R., and another Unidentified Capitol Police Officer.

**PHOTO E**



**PHOTO F**



As BYERLY continued assaulting and charging at officers, he grabbed at, and attempted to take possession of, A.G.'s baton **(Photo G).**

**PHOTO G**



At approximately 2:11:05 p.m., a cloud of smoke (possibly from a fire extinguisher) was dispersed from the direction of the riot crowd as BYERLY continued to assault the officers. At approximately 2:11:07 p.m., while officers attempted to restrain BYERLY, he continued to charge at A.G. At this point, the lettering on BYERLY's beanie is clearly visible containing the word "Kutztown" **(Photo H).**

**PHOTO H**



During this investigation, it was discovered that BYERLY's confirmed residence, located in Fleetwood, PA, is approximately five miles from the city of Kutztown, PA.

As depicted in **Photo I**, at approximately 2:11:09, and because of his attempts to defend

himself and restrain BYERLY, A.G. appeared to lose control, fall, and land on his hands.

**PHOTO I**



Officers were finally able to restrain BYERLY. Nevertheless, BYERLY continued to resist and assault the officers. BYERLY was able to flee with the assistance of a fellow rioter. A.G. recovered the taser from the ground and handed it to I.R., who then handed the taser to an unidentified USCP Officer.

**Assault on a Member of the News Media**

Based on a review of footage posted publicly by various media outlets, at some time on the afternoon of January 6, 2021, prior to 2:10 p.m., the MONM victim was observed in the vicinity of the U.S. Capitol Building property, near the Lower West Terrace of the Capitol. The MONM victim was dressed in all black and appeared to be wearing a helmet-style gas mask with a "Smith" label, a lanyard with Associated Press lettering, and was carrying at least one camera. While standing on a wide set of stairs leading up to the Western front of the U.S. Capitol Building, the MONM victim was pulled backward down the stairs by a group of unknown subjects. As depicted in **Photo J**, the individual identified as BYERLY was observed on the video standing behind the group pulling the MONM victim down the stairs. BYERLY is observed to be surveying the situation involving the assault on the MONM victim.

**PHOTO J**



Once the MONM victim was pulled to the bottom of the stairs, he was confronted by the group of unknown subjects that pulled him down. The MONM victim appeared to attempt to defuse the situation by backing away from the group and relocating his position elsewhere on the stairs, although he was followed at a distance by some of the unknown subjects while BYERLY continued to observe.

Shortly afterward, on the same set of stairs but several yards from the original altercation, the MONM victim was confronted by another subject, who appeared to yell at the MONM victim and approach him aggressively, causing the MONM victim to retreat backwards up the stairs. With his left hand, one of the unknown subjects involved in the original altercation grabbed the identification lanyard hanging around the MONM victim's neck. This unknown subject eventually grabbed the identification lanyard around the MONM victim's neck with both hands and dragged the MONM victim back down the stairs.

At the bottom of the stairs, BYERLY and three other subjects grabbed the MONM victim and pushed, shoved and dragged him parallel to the stairs, back towards the site of the original altercation **(Photo K).**

**PHOTO K**



In particular, BYERLY grabbed the MONM victim with both hands near the MONM victim's shoulder and upper chest and pushed the MONM victim backward. BYERLY then continued to push and drag the MONM victim past the site of the original altercation and toward a densely grouped section of the gathered crowd **(Photo L).**

**PHOTO L**



BYERLY was joined by another unknown subject, previously uninvolved with the altercation, who grabbed the MONM victim with his right hand near the MONM's lower chest/abdomen area. BYERLY then placed both of his hands in the area of the MONM victim's face and neck and continued to shove and push the MONM victim towards a densely grouped section of the gathered crowd, away from the stairs, and towards a low stone wall that separates the stairs of the west front of the U.S. Capitol Building from the west lawn below **(Photo M).**

**PHOTO M**



BYERLY was observed on the video shoving the MONM victim forcefully in the head/neck area, causing the MONM victim to stumble backward into other members of the crowd. At this point in the altercation against the MONM victim, the lettering on BYERLY's beanie was clearly visible as "Kutztown" **(Photo N).**

**PHOTO N**



BYERLY's beanie in the video of the MONM assault (Photo N) is consistent with the beanie worn by BYERLY in the BWC of the previously described assault on law enforcement officers (Photo H, above). Based on my comparison of the known photograph of BYERLY (Photo A, above) and the video image of the man wearing the "Kutztown" beanie assaulting the MONM victim, there is probable cause to believe that the individual who assaulted the MONM victim is BYERLY.

**Submitted Tips Regarding the Identity of the Subject**

On approximately February 3, 2021, the FBI posted photographs of an unidentified male from the riot footage described above to its website and to social media in order to garner public assistance to identify the individual. The male was given the moniker "193 – AOM/AFO." The FBI posted additional photographs of the unidentified male on April 5, 2021. In total, nine photos of the male were posted by the FBI.

**BOLO AFO/AOM-193**







On April 5, 2021, a known individual herein referred to as Witness 1 called the FBI National Threat Operations Center (NTOC) and identified BOLO AFO/AOM-193 as Pennsylvania resident "ALAN BYERLY." Witness 1 stated that BOLO AFO-193 is BYERLY who lives in the Blandon or Fleetwood area of Pennsylvania. Witness 1 also stated that BYERLY frequents the business in Fleetwood where Witness 1 works. Witness 1 stated that BYERLY mentioned to a friend that he is just waiting to be arrested because he knows his picture has been publicized.[1] On June 17, 2021, Witness 1 added that he/she has known BYERLY for six to seven years.

After receiving the initial information from Witness 1, the FBI utilized investigative resources to confirm that BYERLY has a T-Mobile cellular device assigned a telephone number ending in -8217. Records provided by T-Mobile reveal that the cellular device was present in Pennsylvania on January 5, 2021, in Washington, D.C. on January 6, 2021, and returned to Pennsylvania after that date until January 12, 2021.

---

[1] As of June 24, 2021, you affiant is aware of nine tips regarding the identity of BOLO AFO/AOM-193. One tip was about BYERLY as mentioned above. In addition, seven other individuals submitted information regarding 193-AFO to the FBI NTOC, stating they thought 193-AFO could be various individuals. Three of these individuals provided persons who were not BYERLY, believing 193-AFO was another person. The first of these individuals provided the FBI with a photograph of an individual who clearly did not match the appearance of 193-AFO. The second tipster reported a common name to the FBI, with no additional information. This tipster was anonymous and provided no contact information. The third tipster identified an individual located in Susquehanna, Pennsylvania; however, the identified individual provided evidence to the FBI that he was not in Washington, D.C. on January 6, 2021. Two additional tipsters provided identities of persons lacking matching or similar physical features as those of the individual in 193-AFO. Another tip could not be matched with 193-AFO due to lack of comparable evidence. Another tipster identified a retired U.S. Air Force fighter pilot who tipster knew in 1978-1979 from an Air Force Base in Germany. Finally, a ninth tipster referenced a photo of 193-AFO, but was not attempting to identify 193-AFO, but another unidentified person visible within the same photo frame as 193-AFO.

Based on the foregoing, your affiant submits there is probable cause to believe that ALAN WILLIAM BYERLY violated 18 U.S.C. § 111(b), which makes it a crime to forcibly assault, resist, oppose, impede, intimidate, or interfere with any person designated in section 1114 of Title 18 while engaged in or on account of the performance of official duties, while using a deadly or dangerous weapon; to wit: a taser or taser-like device. Persons designated within section 1114 of Title 18 include any person assisting an officer or employee of the United States in the performance of their official duties and where the acts in violation of this section involve physical contact with the victim and the intent to commit another felony.

Your affiant further submits there is probable cause to believe that ALAN WILLIAM BYERLY violated 18 U.S.C. § 231(a)(3), which makes it unlawful to commit or attempt to commit any act to obstruct, impede, or interfere with any fireman or law enforcement officer lawfully engaged in the lawful performance of his official duties incident to and during the commission of a civil disorder which in any way or degree obstructs, delays, or adversely affects commerce or the movement of any article or commodity in commerce or the conduct or performance of any federally protected function. For purposes of Section 231 of Title 18, a federally protected function means any function, operation, or action carried out, under the laws of the United States, by any department, agency, or instrumentality of the United States or by an officer or employee thereof. This includes the Joint Session of Congress where the Senate and House count Electoral College votes.

Your affiant further submits that there is probable cause to believe that ALAN WILLIAM BYERLY violated 18 U.S.C. §§ 1752(a)(1), (2), and (4), which make it a crime to (1) knowingly enter or remain in any restricted building or grounds without lawful authority to do; (2) knowingly, and with intent to impede or disrupt the orderly conduct of Government business or official functions, engage in disorderly or disruptive conduct in, or within such proximity to, any restricted building or grounds when, or so that, such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions; and (4) knowingly engages in any act of physical violence against any person or property in any restricted building or grounds; or attempts or conspires to do so. For purposes of Section 1752 of Title 18, a "restricted building" includes a posted, cordoned off, or otherwise restricted area of a building or grounds where the President or other person protected by the Secret Service, including the Vice President, is or will be temporarily visiting; or any building or grounds so restricted in conjunction with an event designated as a special event of national significance.

Your affiant further submits there is probable cause to believe that ALAN WILLIAM BYERLY violated 40 U.S.C. § 5104(e)(2)(F), which makes it a crime to willfully and knowingly: engage in an act of physical violence in the Grounds or any of the Capitol Buildings.

Your affiant submits there is also probable cause to believe that ALAN WILLIAM BYERLY violated 18 U.S.C. § 113(a)(4) and (5), which makes it unlawful, within the special maritime and territorial jurisdiction of the United States, to commit an assault by striking, beating,

or wounding, and aiding and abetting in such a crime.



_____
JOSHUA D. STENZEL
SPECIAL AGENT, FBI

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone this 25th day of June, 2021.

_____
G. MICHAEL HARVEY
U.S. MAGISTRATE JUDGE