**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | NO. 21-MJ-500 |
| ALAN WILLIAM BYERLY | : | |

<u>**GOVERNMENT'S MOTION AND MEMORANDUM FOR PRETRIAL DETENTION**</u>

      The United States of America, by and through its attorney, the Acting United States Attorney for the District of Columbia, respectfully submits this motion and memorandum that the defendant, Alan William Byerly, be detained pending trial pursuant to 18 U.S.C. § 3142(f)(1)(A) [Crime of Violence]. The defendant was a brazen and violent participant in the disruption and disorder surrounding the events at the United States Capitol on January 6, 2021, and, specifically, engaged in the assault of law enforcement officers with a taser or taser-like device meant to deliver a debilitating electric shock and the assault of a credentialed member of the news media. The defendant's criminal history includes convictions and arrests for crimes of violence and driving under the influence of alcohol/illegal drugs.

      The violations alleged in this case prompted the magistrate judge in the arresting jurisdiction to convene a hearing on July 12, 2021. The magistrate judge considered the severity of the allegations and photographic evidence showing the defendant's actions during the insurrection. The judge said, the law enforcement officers that the defendant assaulted were protecting the constitutionally-mandated certification of the election while the defendant and other rioters attempted to derail that democratic process. "I can't think of anything that would be more dangerous than that." The judge concluded that the defendant was a danger to the community and ordered his detention pending removal to this Court.

With this matter now before this Court and under its jurisdiction, the government respectfully requests that the following points and authorities, as well as any other facts, arguments and authorities to be presented at a detention hearing, be considered in the Court's determination regarding pre-trial detention.

**Factual Background**

1.      **The Attack on the United States Capitol on January 6, 2021.**

The United States Capitol Building and Grounds constitute the "territorial jurisdiction" of the United States as "lands reserved or acquired for the use of the United States" and under its "exclusive or concurrent jurisdiction." 18 U.S.C. § 7(3). Congress has enacted certain criminal prohibitions for conduct occurring within the territorial jurisdiction of the United States (also known as federal enclave jurisdiction). *See, e.g.*, 18 U.S.C. § 113 (assault); 18 U.S.C. § 661 (theft); 18 U.S.C. § 1363 (property destruction); 18 U.S.C. § 2111 (robbery).

The United States Capitol is secured 24 hours a day by U.S. Capitol Police. Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts manned by U.S. Capitol Police. Only authorized individuals with appropriate identification are allowed access inside the U.S. Capitol. On January 6, 2021, the exterior plaza of the U.S. Capitol was also closed to members of the public.

On January 6, 2021, a joint session of the United States Congress convened at the U.S. Capitol, which is located at First Street, SE, in Washington, D.C. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the U.S. Capitol to certify the vote count of the Electoral College for the 2020 Presidential Election, which had taken place on November 3, 2020. The

joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Michael Pence, who is also the President of the Senate, was present and presiding, first in the joint session, and then in the Senate chamber.

As the proceedings continued in both the House and the Senate, and with Vice President Michael Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol. As noted above, temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the U.S. Capitol building and the proceedings underway inside.

At such time, the certification proceedings were still underway and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the U.S. Capitol; however, shortly after 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of the U.S. Capitol Police, as others in the crowd encouraged and assisted those acts.

At approximately 2:20 p.m., members of the United States House of Representatives and United States Senate, and Vice President Michael Pence, were instructed to—and did—evacuate the chambers. Accordingly, the joint session of the United States Congress was effectively suspended until shortly after 8:00 p.m. Vice President Pence remained in the U.S. Capitol from the time he was evacuated from the Senate Chamber until the sessions resumed.

During the course of the violent protests, several individuals were armed with weapons including bats, pepper spray, sticks, zip ties, as well as bulletproof vests and anti-tear gas masks.

During the course of the violent protest, several law enforcement officers were assaulted and injured by these violent protesters while attempting to protect the U.S. Capitol and the individuals inside of the building. These assaults occurred both inside of the Capitol, as well as on the steps outside of the Capitol and the grounds of the Capitol.

During national news coverage of the events, video footage captured on Body Worn Cameras (BWC) of Law Enforcement Officers of the Washington, D.C. Metro Police Department (MPD) present on the scene depicted evidence of violations of local and federal law, including scores of individuals inside the U.S. Capitol building without authority to be there.

Additionally, news coverage of January 6, 2021, documented numerous attacks on members of the news media who were present to cover the events at, around, and in the U.S. Capitol building.   These included reports of members of the news media being harassed, threatened, robbed, and assaulted based on their perceived roles as journalists, and equipment belonging to several news organizations was stolen, damaged, and/or destroyed.

The defendant, as detailed below, is charged with two instances of assault, as well as other criminal violations.

### 2.      Alan William Byerly's Criminal Conduct

Several videos from various sources taken during assaults on January 6, 2021, at the United States Capitol, depict an individual identified as ALAN WILLIAM BYERLY: 1) assaulting MPD and unidentified U.S. Capitol Police (USCP) officers, to include the use of a taser device meant to deliver a debilitating electric shock; and 2) assaulting a credentialed member of the news media (MONM), specifically a photographer assigned to the Associated

Press (hereinafter referred to as "the MONM victim"). All these crimes occurred in the general area of the West Terrace of the U.S. Capitol Building.

### Assault on Law Enforcement Officers

The BWC footage of three MPD officers who were physically assaulted by a man later identified as ALAN WILLIAM BYERLY (hereinafter BYERLY) revealed the following:

At approximately 2:10 p.m., a crowd of violent rioters were assembled on the Lower West Terrace of the Capitol Grounds adjacent to the media tower. Law enforcement officers from USCP and MPD had formed a line of bike racks to act as a barrier against the crowd. Officers were standing watch behind this line and fending off repeated attempts by the rioters to pull on the bike racks and assault the officers **(Photo A).**

**PHOTO A**



As shown in **Photo B** below, beginning at approximately 2:10 p.m., the individual later identified as BYERLY was seen among the crowd of rioters near the established police line with what appears to be a taser device designed to deliver a debilitating electric shock grasped in BYERLY's right hand. At approximately 2:10:54 p.m. and seemingly unprovoked, BYERLY appeared to press and activate the taser, as the electric charge of the taser was clearly audible. Shortly thereafter, BYERLY raised his right arm while holding the taser in his right hand and proceeds to charge at the officers (**Photo C**).

**PHOTO B**



**PHOTO C**



In direct response to BYERLY's action and starting at approximately 2:10:54 p.m., multiple MPD and USCP officers yelled "taser! taser! taser!," seemingly to warn other officers that BYERLY was charging and attacking the officers by using a taser. At approximately 2:10:55 p.m., and according to MPD Officer BWC, an identified MPD Officer (herein referred to as MPD-1) yelled: "He had a taser," to another officer, apparently referring to BYERLY who, at the time, was being restrained by other officers.

At 2:11 p.m., the officers appeared to have successfully removed the taser from BYERLY's hands. However, as depicted in Photos D and E below, BYERLY continued to charge toward the officers, physically strike, and push against officers, specifically identified officers herein referred to as A.G., I.R., and another Unidentified Capitol Police Officer.

**PHOTO D**



**PHOTO E**



As BYERLY continued assaulting and charging at officers, he grabbed at, and attempted to take possession of A.G.'s baton **(Photo F)**.

**PHOTO F**



At approximately 2:11:05 p.m., a cloud of smoke (possibly from a fire extinguisher) was dispersed from the direction of the riot crowd as BYERLY continued to assault the officers.   At approximately 2:11:07 p.m., while officers attempted to restrain BYERLY, he continued to charge at A.G.

9

As depicted in Photo G, at approximately 2:11:09, and because of his attempts to defend himself and restrain BYERLY, A.G. appeared to lose control, fall, and land on his hands.

**PHOTO G**



Officers were finally able to restrain BYERLY. Nevertheless, BYERLY continued to resist and assault the officers. BYERLY was able to flee with the assistance of a fellow rioter. A.G. recovered the taser from the ground and handed it to I.R., who then handed the taser to an unidentified USCP Officer.

**<u>Assault on a Member of the News Media</u>**

Video footage posted publicly by various media outlets reveals that at some time on the afternoon of January 6, 2021, prior to 2:10 p.m., the MONM victim was observed in the vicinity of the U.S. Capitol Building property, near the Lower West Terrace of the Capitol. The MONM victim was dressed in all black and appeared to be wearing a helmet-style gas mask with a "Smith" label, a lanyard with Associated Press lettering, and was carrying at least one camera. While standing on a wide set of stairs leading up to the Western front of the U.S. Capitol Building, the MONM victim was pulled backward down the stairs by a group of unknown subjects. As depicted

in **Photo H,** BYERLY stood behind the group pulling the MONM victim down the stairs.

**PHOTO H**



Once the MONM victim was pulled to the bottom of the stairs, he was confronted by the group of unknown subjects that pulled him down. The MONM victim appeared to attempt to defuse the situation by backing away from the group and relocating his position elsewhere on the stairs, although he was followed at a distance by some of the unknown subjects while BYERLY continued to observe.

Shortly afterward, on the same set of stairs but several yards from the original altercation, the MONM victim was confronted by another subject, who appeared to yell at the MONM victim and approach him aggressively, causing the MONM victim to retreat backwards up the stairs. With his left hand, one of the unknown subjects involved in the original altercation grabbed the identification lanyard hanging around the MONM victim's neck. This unknown subject eventually grabbed the identification lanyard around the MONM victim's neck with both hands and dragged the MONM victim back down the stairs.

At the bottom of the stairs, BYERLY and three other subjects grabbed the MONM victim and pushed, shoved and dragged him parallel to the stairs, back towards the site of the original altercation (**Photo I).**

**PHOTO I**



In particular, BYERLY grabbed the MONM victim with both hands near the MONM victim's shoulder and upper chest and pushed the MONM victim backward. BYERLY then continued to push and drag the MONM victim past the site of the original altercation and toward a densely grouped section of the gathered crowd **(Photo J)**.

**PHOTO J**



BYERLY was joined by another unknown subject, previously uninvolved with the altercation, who grabbed the MONM victim with his right hand near the MONM's lower chest/abdomen area. BYERLY then placed both of his hands in the area of the MONM victim's face and neck and continued to shove and push the MONM victim towards a densely grouped section of the gathered crowd, away from the stairs, and towards a low stone wall that separates the stairs of the west front of the U.S. Capitol Building from the west lawn below (**Photo K**).

**PHOTO K**



BYERLY shoved the MONM victim forcefully in the head/neck area, causing the MONM victim to stumble backward into other members of the crowd.

### 3.      Byerly's Arrest and Statements Made on July 7, 2021

On July 7, 2021, BYERLY was arrested. Afterward, law enforcement agents explained BYERLY's constitutional rights to him and he knowingly waived his rights by signing a Miranda rights card.   BYERLY admitted to taking part in the violent protest and confessed to perpetrating the violent conduct described above and evidenced by the videos and photographs.

### 4.      Procedural History

On June 25, 2021, BYERLY was charged by complaint filed in the United States District Court for the District of Columbia with: 1) Assaulting a Federal Officer, in violation of 18 U.S.C. § 111(b); 2) Obstruction of Law Enforcement During Civil Disorder, in violation of 18 U.S.C. § 231(a)(3); 3) Knowingly Entering ore Remaining in any Restricted Building or Grounds Without Lawful Authority and Engaging in Physical Violence, in violation of 18 U.S.C. § 1752(a)(1), (2), and (4); 4) Violent Entry and Disorderly Conduct on Capitol Grounds, in

violation of 40 U.S.C. § 5104(e)(2)(F); and, 5) Assault, in violation of 18 U.S.C. § 113(a)(4) and (5).

On July 12, 2021, a probable cause and detention hearing were conducted by a magistrate judge in the Eastern District of Pennsylvania. BYERLY stipulated that there was probable cause for his arrest and the Court agreed. Following a detention hearing, the Court granted the government's motion for BYERLY's detention pursuant to § 3142(f)(1)(A) [Crime of Violence] of the federal bail statute. The Court ordered BYERLY to be removed to the District of Columbia for future proceedings in this matter.

## ARGUMENT

There are four factors under § 3142(g) that the Court should consider and weigh in determining whether to detain a defendant pending trial: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. *See* 18 U.S.C. §3142(g). In consideration of these factors, the government respectfully submits that there are no conditions or combinations of conditions which can effectively ensure the safety of any other person and the community.

### Nature and Circumstances of the Offenses Charged

During the course of the January 6, 2021, siege of the U.S. Capitol, multiple law enforcement officers were assaulted by an enormous mob, which included numerous individuals with weapons, bulletproof vests, pepper spray and, in this case, a taser, who were targeting the officers protecting the Capitol. Additionally, the violent crowd encouraged others in the crowd to work together to overwhelm law enforcement and gain unlawful entry into the U.S. Capitol.

What is extremely troubling about BYERLY's conduct is the fact that he arrived at the Capitol with a taser or taser-like device and, unprovoked, charged at law enforcement officers with it, attempting to strike them. At the time, the law enforcement officers were in full uniform with the word "police" clearly visible. When the taser was taken away from him, BYERLY continued to charge at officers and attempted to take an officer's baton, wrestling him for it.

Shortly before assaulting law enforcement officers, BYERLY assaulted a credentialed reporter, violently grabbing and shoving him as part of a gang attack. BYERLY's actions were violent, criminal, and represented a further dangerous escalation aimed at allowing other violent rioters to commit criminal acts.

As a result, the nature and circumstances of these offenses overwhelmingly weigh in favor of detention.

### Weight of the Evidence Against the Defendant

The second factor to be considered, the weight of the evidence, also clearly weighs in favor of detention. The evidence against BYERLY is also quite strong and compelling. As noted above, BYERLY was observed on police body worn cameras attacking law enforcement officers. BYERLY admitted in his recorded post-arrest interview that he had possessed a "dual-use flashlight/taser combination device." This is the device that he used when he encountered the police officers. Additionally, other video evidence captured BYERLY assaulting a member of the media. BYERLY also admitted that he engaged in that criminal conduct.

Because the evidence against BYERLY is overwhelmingly strong, the weight of the evidence weighs heavily in favor of detention.

## Defendant's History and Characteristics

BYERLY is a 54-year-old resident of the Eastern District of Pennsylvania. He was previously employed as a carpenter, but has been unemployed for the past year. He financially supports himself with retirement savings.

BYERLY's criminal history reveals that he is a violent person. He has two convictions for infliction of corporal injury, a conviction for driving under the influence of alcohol or a controlled substance, and multiple arrests for assault. This criminal history combined with BYERLY's actions on January 6, 2021, as demonstrated by his apparent willingness to engage in the assaultive behavior as part of a violent mob while armed with a taser and striking law enforcement officers and a reporter, should give this Court great concern about the danger he poses to the community if released.

## Danger to the Community and Flight Risk

The fourth factor, the nature and seriousness of the danger to any person or the community posed by a defendant's release, also weighs in favor of BYERLY's detention. The charged offenses involve assaultive conduct with both a taser and with his fists. The danger the defendant caused by participating in and assisting the violent mob cannot be understated. BYERLY was a spoke in the wheel that caused the historic events of January 6, 2021, and he is thus a danger to our society and a threat to the peaceful functioning of our community.

Given the above assessment of all four relevant factors, no condition, or combination of conditions, can ensure that BYERLY will comply with court orders, abide by appropriate release conditions, and not pose a danger to the community.

**CONCLUSION**

WHEREFORE, the United States respectfully requests that the Court grant the government's motion to detain the defendant pending trial.


Respectfully submitted,

CHANNING D. PHILLIPS
ACTING UNITED STATES ATTORNEY


    /s/  ANITA EVE
by:      Anita Eve
PA Bar No. 45519
Assistant United States Attorney
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106
(215) 764-2177
Anita.eve@usdoj.gov

18